OPINION
{¶ 1} Appellant, Misty Marie Richards, appeals the trial court's denial of a pre-trial motion to dismiss one count of escape. Appellee is the State of Ohio.
 STATEMENT OF FACTS AND CASE {¶ 2} Misty Richards and Terry Richards are married and co-defendants in the underlying case.
 {¶ 3} The facts which serve as the basis for the escape charge are as follows:
 {¶ 4} On May 19, 2007, an altercation involving numerous people occurred at Whiskey Ranch. Misty Richards was accused of assaulting Tara Lamp. As a result, the responding officer secured Misty in the rear seat of his cruiser while he conducted an investigation and assisted other officers. Terry was advised that Misty was being held in the vehicle pending an investigation. Terry went to the cruiser, opened the rear door and released Misty.
 {¶ 5} On July 2, 2007, Terry Richards was indicted by the Stark County Grand Jury on one count of complicity to commit escape in violation of R.C. 2921.34(A)(1) and (C)(2)(c)(i) and R.C. 2923.03(A)(2), a fifth degree felony. Misty Richards, was indicted for one count of escape in violation of R.C. 2921.34(A)(1) and one count of assault in violation of R.C. 2903.13(A).
 {¶ 6} On August 8, 2007, Misty Richards and Terry Richards filed a joint motion to dismiss the charge of escape. On August 31, 2007, the trial court conducted an evidentiary hearing on the motion to dismiss. The sole issue before the court was whether the evidence was legally sufficient to establish that Misty had been placed *Page 3 
under arrest when she was secured in the police cruiser.[1] Officer Gary Mead of the Massillon Police Department and Misty Richards testified at the hearing.
 {¶ 7} Officer Mead testified that, on May 19, 2007, he observed a large group of people outside the Whiskey Ranch, a bar, located at the intersection of Lincoln Way and Erie Streets in Massillon, Ohio. He stated that he responded to the scene, observed Tara Lamp with a bloody nose and saw approximately fifteen to eighteen people pushing and shoving each other. He stated that he called for back up units. He stated that Tara Lamp advised him that she had been assaulted by Misty Richards. He stated that he put Misty in the rear seat of his police cruiser and told her "she was being held for investigation". T.10, 23.
 {¶ 8} Officer Mead testified that a person placed in the rear seat of a police cruiser is "secured". T.12. In other words, the secured person can not crawl into the front seats, open a rear window or open the back doors. He stated that he spoke with Terry and advised him that Misty was being held for the investigation.
 {¶ 9} Officer Mead testified that after he secured Misty he spoke with the owner of the business and the victim, Tara Lamp, and determined that he had probable cause to arrest Misty for assault. Officer Mead testified that, normally, he would have returned to the cruiser and advised the secured person that they were under arrest. However, Officer Mead stated that, in this instance, the crowd continued to push and shove each other and he had to assist other officers with the chaotic situation before returning to the cruiser. He stated that, while he was assisting other officers, Terry opened the door to the cruiser and released Misty. He stated that, after Misty exited the vehicle, she ran *Page 4 
down the sidewalk. He stated that he and another officer chased Misty, handcuffed her and advised her that she was under arrest for assault. The officers also arrested Terry for complicity to commit escape.
 {¶ 10} Misty Richards testified that, when Officer Mead approached, she advised him that Tara Lamp had assaulted her girlfriend.[2] She stated that the officer placed her in the back of the police cruiser, advised her that she was not under arrest and walked away. She stated that she knew she was locked in and could not open the back doors of the cruiser. She stated that Terry came to the cruiser and asked her why she was being held. She stated that she told him she didn't know. She stated Terry spoke with the police officer, came back to the cruiser, opened the door and let her out of the cruiser. She stated that she quickly walked away. She stated that she did not believe she was under arrest and did not know she was not allowed to leave the cruiser.
 {¶ 11} After hearing the evidence, the trial court overruled the motion to dismiss. The trial court held that the police officer developed the requisite intent to place Misty under arrest and that Misty was in detention prior to leaving the cruiser.
 {¶ 12} On September 10, 2007, Misty Richards pleaded no contest to one count of escape and one count of assault. Terry Richards pleaded no contest to one count of complicity to commit escape. Prior to accepting the no contest pleas, the State gave a recitation of the facts.[3]
Based upon the recitation of facts, the trial court accepted the no *Page 5 
contest pleas and found Misty Richards and Terry Richards guilty as charged. Sentencing was deferred pending a pre-sentence investigation.
 {¶ 13} On October 15, 2007, Terry Richards and Misty Richards were each sentenced to one year of probation and were ordered to pay a $500.00 fine and court costs.
 {¶ 14} It is from the judgment of conviction that appellant, Misty Richards, now appeals setting forth the following assignment of error:
 {¶ 15} "THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT'S MOTION TO DISMISS THE ONE (1) COUNT OF ESCAPE. THE TRIAL COURT'S FINDINGS OF FACTS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 16} In this assignment of error, appellant argues that the trial court's judgment denying the motion to dismiss was against the manifest weight of the evidence.
 {¶ 17} We must first address the propriety of filing a motion to dismiss which challenges the weight and/or sufficiency of the State's evidence.
 {¶ 18} Crim. R. 12(C) sets forth the pre-trial motions which may be made and considered by the trial court. The rule states that "prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue." Pursuant to the rule, a motion to dismiss can only raise matters capable of determination without a trial of the general issue. Crim R. 12 (C); State v. Scott, 174 Ohio App. 3d 446,2007-Ohio-7065, 882 N.E. 2d 500; State v. Ethridge, Cuyahoga App. No. 87859, 2006-Ohio-6768, at paragraph 5; State v. Serban, Stark App.No. 2006 CA 00198, 2007-Ohio-3634, at paragraph 25. *Page 6 
 {¶ 19} In a criminal context, a motion to dismiss must "test the sufficiency of the indictment, without regard to the quantity or quality of evidence that may be produced by either the state or the defendant."State v. Patterson (1989), 63 Ohio App.3d 91, 95, 577 N.E.2d 1165. If a trial court considers and rules upon a motion to dismiss that goes beyond the face of the indictment the decision is strictly advisory and an improper exercise of judicial authority. State v. Varner (1991),81 Ohio App.3d 85, 86, 610 N.E. 2d 476.
 {¶ 20} In Lorain v. Slattery (Sept. 22, 1999), 9th Dist. No. 98CA007140, the Ninth District Court held that a trial court cannot go beyond the face of the indictment when ruling on a motion to dismiss, stating:
 {¶ 21} "When a defendant in a criminal action files a motion to dismiss which goes beyond the face of the indictment, he is, essentially, moving for summary judgment.
 {¶ 22} "The Ohio Rules of Criminal Procedure, however, do not allow for `summary judgment' on an indictment prior to trial." State v.McNamee (1984), 17 Ohio App.3d 175, 478 N.E.2d 843; Akron v. Davis (July 31, 1991), 9th Dist. No. 14989, unreported.
 {¶ 23} Any examination of the evidence as it relates to the elements of the offense that goes beyond the face of the indictment must be addressed in a motion for acquittal at the close of the state's case.Serban, supra at 26; State v. Crosby, Hamilton App. No. C-950903, (March 26, 1997), 1997 WL 133361, (holding "a motion to dismiss, made pretrial, was, in essence, a motion for acquittal going to the factual merit of the charges, a procedure not recognizable in the criminal law.) See alsoState v. Varner, *Page 7 
supra; State v. Shaw, Franklin App. No. 02AP-1036, 2003-Ohio-2139;State v. Brown (Apr. 26, 1999), Athens App. No. 98CA14, unreported,1999 WL 281335; State v. Carpenter, (Aug. 17, 1998) Butler App. No. CA98-02-034, unreported, 1998 WL 476757.
 {¶ 24} In the case sub judice, appellant does not argue that the indictment is not valid on its face. Rather, the motion to dismiss questioned the weight and sufficiency of the state's evidence with regard to the element of detention in the escape charge. The motion required the trial court to consider the quantity and the quality of evidence which would have otherwise been presented by the State at trial. As such, the motion required the trial court to give an advisory opinion and consider matters beyond the face of the indictment, beyond the parameters of Crim. R. 12(C) and beyond the trial court's pre-trial authority.
 {¶ 25} For these reasons, we find the motion to dismiss was properly denied by the trial court. We are mindful that the trial court's decision is based on different reasoning than the reasoning of this Court. However, this Court's duty is to review judgments, not reasons. See Greel v. City of Canton, Stark App. No. CA-8994, (Nov. 9, 1992), 1992WL330043. Furthermore, "when a trial court reaches a correct conclusion even if it does so for incorrect reasons, its judgment must be affirmed." Meadow v. Hicks, Summit App. No. 23574, 2008-Ohio-1802
at paragraph 20; see also, State v. Campbell (2000), 90 Ohio St. 3d 320,329, 738 N.E. 2d 1178. *Page 8 
 {¶ 26} Accordingly, appellant's assignment of error is not well taken and is, hereby, overruled.
 {¶ 27} The judgment of the Stark County Court of Common Pleas is, hereby, affirmed.
Edwards, J. Farmer, P.J. and Delaney, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] The indictment stated that Misty, knowing she was under detention or being reckless in that regard, did purposely break or attempt to break detention.
[2] She testified, "I * * * told him that the lady over there [Tara Lamp] in the black dress had hit my girlfriend in the face. And I had, I had gotten between them and pulled them apart and we were leaving." T.39.
[3] The prosecutor recited the facts as follows:
"This occurred on May 19, 2007. * * * at the Whiskey Ranch in Massillon, Ohio. The Defendant Misty Richards struck Tara Lamp in the face giving her a bloody nose and a bruised lip. The police did detain her in the back of a police car, while she was back there, her husband opened the door and let her out; and she ran from the scene." T.19. *Page 1